## LISSNER ASSOCIATES, LTD.

Agreement for Restructuring and Liquidation Services
General Terms and Conditions

This Agreement (the "Agreement"), dated effective as of October 8, 2008, is by and between Lissner Associates, Ltd. ("Lissner"), Scott Brass, Inc. ("SBI") and Scott Brass Holding Corp. ("Holding" and together with SBI, the "Company"). Under this Agreement, Lissner will perform, without limitation, the services described in this Agreement, both before and after the commencement of any bankruptcy cases, if any, by or against the Company, in each case reporting to the Board(s) of Directors of the Company (collectively, the "Board") and taking direction from the Board. In consideration of the mutual covenants contained herein, the parties agree as follows:

1. Scope of Work. From time to time, both before and after the commencement of any bankruptcy cases, if any, by or against the Company, Lissner shall perform services for or on behalf of the Company, subject to the review, direction and oversight of the Board as requested by one or more "Authorizations." Each Authorization shall specify the terms and conditions of the services to be performed by Lissner, and shall become effective only upon execution by the Company and Lissner. In the event certain provisions of an Authorization conflict with the provisions of this Agreement, the parties hereto agree that the provisions of this Agreement shall be controlling.

2. Compensation - Payment of Fees and Expenses. The Company shall pay Lissner fees for services as set forth in each Authorization, or if no fee amount is specified in the applicable Authorization, fees for services shall be charged at Lissner's customary hourly rates as outlined on Work/Project Authorization No.1, and shall be paid, by wire transfer of funds to the account specified below, on the same day as submission by Lissner to the Company of its weekly invoice. Time traveling in connection with the engagement is charged at (a) for all consultants of Lissner other than Michael W. Lissner ("Michael"), fifty (50%) percent of such hourly rates and (b) for Michael, one hundred (100%) percent of his hourly rate. The Company shall also reimburse Lissner for all reasonable documented out of pocket costs and expenses ("Expenses") incurred in connection with the services provided pursuant to this Agreement. Payments made by the Company to Lissner pursuant to this Section 2 shall be remitted by wire transfer to the following account:

    Bank Name: JPMorgan Chase Bank, N.A.
    ABA/Routing No.: 071000013
    Account No.: 4034228
    Reference: For the benefit and credit of Lissner Associates, Ltd.

3. Retainer. In respect of each Authorization, the Company shall pay Lissner a retainer (as described in the applicable Authorization) to cover fees and Expenses of Lissner. The retainer is not a substitute for the Company's timely weekly payment of fees and Expenses. At the completion or earlier termination of the work in respect of the applicable Authorization, without further authorization from the Company, Lissner may apply the retainer to any unpaid fees, Expenses and other charges due Lissner, and any amount of the retainer that is not required

1120788.5

to pay Lissner's fees, Expenses or other charges will be refunded to the Company at such time. The Company acknowledges that (i) the retainer will not be held in a separate account and may be deposited into Lissner's general operating account and (ii) the Company is not entitled to any interest on the retainer.

4. <u>Support Services</u>. The Company shall provide Lissner with duplicating, secretarial and other support services at the location of the work, provided these services are necessary to complete the work. If such services are unavailable at the locations of the work, Lissner may provide such services, and shall be entitled to reimbursement for its ~~actual costs and~~ expenses. 

5. <u>Rights to Work Product</u>. The Company shall retain exclusive rights to ownership of all work product hereunder. Work product shall include reports issued pursuant to any Authorization, but shall exclude, among other things, all working papers by Lissner, memoranda, correspondence, notes, and calculations that Lissner may have prepared or used in the development of reports. Lissner shall have the right to retain copies of reports issued to the Company for Lissner's records. Lissner shall have the right to designate in writing certain work product as belonging to Lissner prior to the creation of such work product, and such designated work product shall be the exclusive property of Lissner if the Company permits such work product to be created by Lissner.

6. <u>Access</u>. The Company shall provide Lissner and its Personnel (as defined below) with access to all of the Company's information, personnel, books, records, and facilities deemed necessary by Lissner to complete the work under each Authorization. The Company shall cause its personnel to cooperate with Lissner and its Personnel. It may be necessary for Lissner to arrange for prospective investors/lenders to visit one or more of the facilities and meet with certain members of the Company. It may also be necessary for the Company to make certain of its personnel available for conference calls to answer questions of prospective investors/lenders. The Company will make reasonable efforts to accommodate such requests for access, provided they are made during normal business hours. Lissner will use its best efforts to (i) accommodate the Company's working schedule so as not to cause undue disruption of the Company's business, and (ii) attend any visits made by prospective investors/lenders. For purposes of this Agreement, the term "Personnel" shall mean any current or former director, officer, employee, representative or independent contractor of Lissner Associates, Ltd., including, without limitation, Michael.

7. <u>Independent Contractor</u>. Unless otherwise specifically set forth in an Authorization, neither Lissner nor any of its Personnel shall be deemed to be an agent, employee, officer or director of the Company; <u>provided, however</u>, that, effective October 13, 2008, Michael, while remaining a full time employee of Lissner, shall serve as Chief Restructuring Officer of the Company. Under no circumstances shall Lissner or any of its Personnel, including Michael, be, or be deemed to be, in control of the operations of the Company, or to be an owner or operator of the Company.

8. <u>No Assumption of Liabilities</u>. Notwithstanding any provision herein to the contrary, Lissner and its Personnel, including Michael, do not assume, and shall not be deemed to have assumed, any liabilities, debts or obligations of the Company of any kind or description.

*[Handwritten insertion at top:]* Except with respect to any Liability that is found in a final Judgement by a court of competent jurisdiction (not subject to further appeal) to have resulted solely and directly from the willful misconduct or gross negligence of Lissner or its Personnel *[initialed]*

9. **Disclaimer of Control Over Environmental Decisions.** Lissner and its Personnel, including Michael, shall neither exercise authority or control over the Company's operations nor participate in arranging for the disposal of hazardous wastes and shall not have the ability or power to direct corporate activities of the Company regarding hazardous waste disposal, storage and other practices relating in any way to the Company's environmental matters. Furthermore, Lissner and its Personnel, including Michael, shall neither control nor have authority over the activities of a facility from which hazardous substances are released and Lissner and its Personnel, including Michael, shall not participate in the management of such a facility. Lissner and its Personnel, including Michael, shall not be liable for any environmental response costs incurred by the Company or others under CERCLA or any other applicable state or federal environmental laws and the Company shall indemnify and hold Lissner and its Personnel, including Michael, harmless for any such costs incurred, ←

10. **Limitation of Liability: Release, Discharge, Defend, Protect, Indemnify and Hold Harmless.**

(a) Lissner, its Personnel and Michael, in his capacity as CRO of the Company and as Personnel of Lissner, shall not have any liability to the Company for any action taken or for refraining from the taking of any action, or for errors in judgment, except for any such claims, damages, liabilities and expenses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted solely and directly from such person's willful misconduct or gross negligence.

(b) The Company hereby agrees to release, discharge, defend, protect, indemnify and hold harmless Lissner, its Personnel and Michael, in his capacity as CRO of the Company and as Personnel of Lissner (each of the foregoing being an "Indemnitee" and all of the foregoing being collectively the "Indemnitees"), from and against any and all claims, actions, damages, demands, liabilities, judgments, costs and reasonable documented out of pocket expenses (including all fees and disbursements of counsel, legal assistants and paralegals which may be incurred in the investigation or defense of any matter and, in the event of litigation, at all trial and appellate levels) whatsoever imposed upon, incurred by or asserted by any person against any Indemnitee, whether direct, indirect or consequential and whether based on any federal, state, local or foreign laws or regulations, under common law or an equitable cause, or on contract or otherwise by reasons of an Indemnitee's services to the Company, which may arise hereunder, or result from or out of this Agreement, or relate to this Agreement or to the performance of the engagement hereunder or any omission hereunder by any Indemnitee, except for any such claims, demands, damages, liabilities and expenses that are found in a final judgment by a court of competent jurisdiction (not subject to further appeal) to have resulted solely and directly from such Indemnitee's willful misconduct or gross negligence. In the event this indemnity is unenforceable as a matter of law as to a particular matter or consequence referred to herein, it shall otherwise be enforceable to the full extent permitted by law.

(c) This indemnification applies, without limitation, to any act, omission, event or relationship between Lissner, its Personnel and/or Michael, on the one hand, and the Company, on the other. The indemnification provisions set forth above shall be in addition to any liability or obligations the Company may otherwise have to Lissner, its Personnel and/or Michael. Without prejudice to the survival of any other obligation of the Company to Lissner, its

1120788.5                                              3

, which to Lissner's knowledge is not subject to a Confidentiality agreement with the Company

Personnel and/or Michael, the indemnities and obligations of the Company contained herein shall survive the termination or completion of the relationship between Lissner or any Indemnitee and the Company, regardless of the manner of such termination or completion.

11. **Confidentiality.** Lissner shall maintain in strict confidence any information of a non-public nature relating to the Company or its business that Lissner may gain or develop in the course of its engagement by the Company, and shall not disclose any such information to any person during or after its engagement by the Company except (i) information that is legally in Lissner's possession prior to the disclosure of such information hereunder; (ii) information that, subsequent to its disclosure hereunder, becomes publicly available; (iii) information that becomes legally available to Lissner on a non-confidential basis from any third party; (iv) information that Lissner discloses as permitted or required by law or order of court; or (v) information that is disclosed with the prior written consent of the Company. Notwithstanding the above, Lissner shall be permitted to disclose any information regarding the Company to (x) Lissner's Personnel who need to know such information to perform the services described in the Authorization provided that such Personnel agree to maintain the confidentiality of such information; (y) any other party approved in writing by the Board; and (z) with respect to non-confidential information, any current creditors of the Company. Upon termination or completion of this Agreement, Lissner shall return to the Company all materials of a non-public nature from the Company in the course of the engagement (other than Lissner's work product), and shall either deliver to the Company or destroy any copies thereof that it may have made or received.

12. **Commencement and Termination.** This Agreement, and the engagement of Lissner hereunder, will be deemed to have commenced on October 8, 2008. This Agreement may be terminated immediately by either party, in its sole discretion, for any reason whatsoever, with or without cause, by giving written notice of termination to the other party. Upon termination of this Agreement, Lissner shall be entitled to all unpaid Expenses incurred pursuant to this Agreement and the remaining unpaid balance of any fees which are due and payable pursuant hereto. For the purposes of this Section 12, "Agreement" shall include any Authorization issued pursuant to this Agreement

13. **Governing Law and Venue.** This Agreement shall be interpreted, construed and enforced under the laws of the State of Illinois, without regard to conflicts of laws, regardless of the location of the performance of services hereunder. Any claim, action or proceeding involving the parties hereto shall be brought exclusively in a state or federal court located in Chicago, Illinois, and the parties hereby irrevocably consent to the jurisdiction of these courts and the proper venue therein, each party hereby waiving any claim that any such forum would be inconvenient.

14. **Joint and Several Obligation.** Each of Scott Brass, Inc. and Scott Brass Holding Corp. shall be jointly and severally liable to perform the obligations of the Company under this Agreement and any and all Authorizations. Any one or more parties constituting the Company may be released from an obligation hereunder without affecting the liability of any party not so released.

15. **Miscellaneous.** This Agreement expresses the entire agreement of the parties hereto and supersedes all prior promises, representations, understandings, arrangements and

1120788.5

agreements among the parties with respect to the subject matter hereof. No change, alteration, or modification of this Agreement shall be effective unless made in writing and signed by all parties hereto. This Agreement shall inure to the benefit of, and shall be binding upon, the respective successors and assigns of the parties hereto, and it shall inure to the benefit of Michael, his heirs, legatees, personal representatives, successors and assigns; provided, that, no party shall assign any right herein or delegate any duties without the prior written consent of the other parties which consent shall not be unreasonably withheld. Failure of any party hereto to enforce any of the provisions of this Agreement or any rights with respect thereto shall in no way be considered to be a waiver of such provisions or rights or in any way affect the validity of this Agreement. In the event that any provision of this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, then the court making such determination may reduce the obligations as to be enforceable according to applicable law and enforce such obligations as reduced. The remaining provisions of this Agreement shall be enforced according to their terms.

16. Counterparts. This Agreement may be signed in one or more counterparts with telefacsimile or electronic signatures. In making proof of this Agreement, it shall not be necessary to produce or account for more than one counterpart thereof signed by each of the parties hereto. Delivery of an executed counterpart of this Agreement by telefacsimile or electronic means shall have the same force and effect as delivery of an original executed counterpart of this Agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

| THE COMPANY | LISSNER |
|---|---|
| SCOTT BRASS, INC. | LISSNER ASSOCIATES, LTD. |
| By: _[signature]_ | By: _[signature]_ |
| Title: President | Title: PRESIDENT |
| SCOTT BRASS HOLDING CORP. | |
| By: _[signature]_ | |
| Title: President + CEO | |

13-OCT-2008 04:02PM FROM-

T-398 P.018/019 F-851

## LISSNER ASSOCIATES, LTD.

Work/Project Authorization No. [1]
Dated: October 8, 2008

In accordance with that certain Agreement for Consulting Services, dated October 8, 2008, by and between Scott Brass, Inc. ("SBI"), Scott Brass Holding Corp. ("Holding" and together with SBI, the "Company") and Lissner Associates, Ltd. (the "Agreement"), the Company hereby authorizes Lissner Associates, Ltd., ("Lissner") to make Michael W. Lissner ("Michael") available as Chief Restructuring Officer of the Company, effective October 13, 2008, and to make such other personnel available to provide necessary support with respect thereto, with the following duties and obligations associated with the restructuring and liquidation of the Company in accordance with the terms, conditions and covenants set forth in the Agreement and in this Authorization:

Under this Agreement, Lissner will perform, subject to review and approval of the Board(s) of the Directors of the Company, without limitation, the following services:

1. Provide assistance in connection with any potential bankruptcy cases of the Company, including the review and preparation of budgets, projections, filing documents and DIP financing;

2. Assist the Company in managing its resources;

3. Assist the Company in monitoring weekly cash flow performance against the wind down budget and address any variance to plan;

4. Assist the Company in managing the orderly wind-down and liquidation of the company assets;

5. Assist the Company in communicating non-confidential information concerning the Company's financial condition and opportunities, as understood at that time, with the Company's management and stakeholders;

6. Assist the Company in preparing and, from time to time thereafter, updating, cash flow forecasts, other projections and other financial data of the Company;

7. In connection with any bankruptcy cases of the Company, assist the Company in preparation of reports to the United States Trustee, including the Statements and Schedules;

8. Assist the Company in preparing a liquidation plan;

9. Assist the Company in reviewing and analyzing the financial ramifications of proposed transactions [including transactions] for which the Company seeks bankruptcy court approval, including, but not limited to, DIP financing and cash management, asset sales, management compensation and/or retention and severance plans;

10. Attend and advise at meetings;

1120788.5

1

11. Assist and advise the Company and its counsel in the development, evaluation and documentation of any plan(s) of reorganization or strategic transaction(s), including developing, structuring and negotiating the terms and conditions of potential plan(s) or strategic transaction(s) and the consideration that is to be provided to unsecured creditors thereunder;

12. Render testimony as required;

13. Assist in coordinating operations and assist management with monitoring and reporting thereon to any bankruptcy court and all interested parties; and

14. Provide such other reasonable and customary services, as specifically requested by the Board and agreed to by Lissner.

Compensation:

Retainer. Lissner shall receive a retainer of $200,000, which shall be paid by wire transfer of funds in accordance with the Agreement. The retainer will be applied to the fees and expenses payable to Lissner under the Agreement.

Fees: Fees for this Authorization will be charged as follows per hour plus Expenses, as stated in Section 2 of the Agreement.

Michael W. Lissner - $500/ Hour

Other Consultants - $350/ Hour

Insurance:

The Company will name Michael W. Lissner on its Directors and Officers insurance policies, and will name Michael W. Lissner on ~~its~~ any employment practices rider to ~~the~~ its Directors and Officers insurance policy and will provide to Lissner copies of such riders and policies that reflect coverage through expiration of all applicable state or federal statutes of limitations.

**THE COMPANY**

SCOTT BRASS, INC.
By: _[signature]_
Title: President

SCOTT BRASS HOLDING CORP.
By: _[signature]_
Title: President, CEO

**LISSNER**

LISSNER ASSOCIATES, LTD.
By: _[signature]_
Title: PRESIDENT

1120788.5

2